STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. R.G.D., DEFENDANT-APPELLANT STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. W.T.P., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 28, 1986—Decided February 28, 1986.

(e) For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course; or

(f) It is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or the failure of the prior litigation to yield a coherent disposition of the controversy.

We note that paragraph (f) might also here apply. We further point out that the mere fact that the constituent claim occurred during the pendency of the litigation is not by itself an "extraordinary reason" overcoming the policies of preclusion. As we have here held, to the extent its adjudication in the pending action may, under the circumstances, provide the basis for an extraordinary reason, the court in the first litigation can deal with the problem by expressly permitting a reservation of the claim.

Before Judges PRESSLER, BILDER and GRUCCIO.

*John Morelli* argued the cause for appellant R.G.D. (*Console, Marmero, Livolsi, Wood, Curcio & Morelli,* attorneys; *John Morelli,* on the brief).

*Robert S. Greenberg* argued the cause for appellant W.T.P.

*Kathleen A. Berkheiser,* Assistant Prosecutor, argued the cause for respondent (*Julian Wilsey,* Cumberland County Prosecutor, attorney; *Kathleen A. Berkheiser,* on the brief).

The opinion of the court was delivered by

BILDER, J.A.D.

These are interlocutory appeals, on leave granted, from an order of the Family Part entered pursuant to *R.* 5:22–2 waiving its jurisdiction over two juveniles. We have consolidated the appeals for the purpose of this opinion.

R.G.D.

■ The sole issue in R.G.D.'s appeal is whether the trial judge correctly considered the probability of the juvenile defendant's rehabilitation in waiving jurisdiction from the Family Part. Because we conclude he did not, we are required to reverse.

*N.J.S.A.* 2A:4A–26, which became effective December 31, 1983, requires the Family Part, upon application of the prosecutor, to waive jurisdiction over serious juvenile offenses unless the probability of rehabilitation before the juvenile reaches the age of 19 substantially outweighs the reasons for waiver. As pertinent to this case, it provides as follows:

> a. On motion of the prosecutor, the court shall, without the consent of the juvenile, waive jurisdiction over a case and refer that case from the family court to the appropriate court and prosecuting authority having jurisdiction if it finds, after hearing, that:
>
> (1) The juvenile was 14 years of age or older at the time of the charged delinquent act; and
>
> (2) There is probable cause to believe that the juvenile committed a delinquent act or acts which if committed by an adult would constitute:
>
> > (a) Criminal homicide other than death by auto, robbery which would constitute a crime of the first degree, aggravated sexual assault, sexual assault, aggravated assault which would constitute a crime of the second degree, kidnapping or aggravated arson;
> >
> > . . . .

(3) Except with respect to any of the acts enumerated in subsection a.(2)(a) of this section or any attempt or conspiracy to commit any of those acts, the State has shown that the nature and circumstances of the charge or the prior record of the juvenile are sufficiently serious that the interests of the public require waiver.

However, if in any case the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver, waiver shall not be granted.

*See also R.* 5:22–2, implementing the statute.

It is beyond dispute that R.G.D. was over 14 and that there was probable cause to believe that he had committed an aggravated sexual assault. The only question was whether there was a probability of his rehabilitation before age 19 which substantially outweighed the reasons for the waiver.

The facts which can be found from the State's evidence are these. About noon on April 26, 1984, A cut her sixth period class to meet defendant R.G.D. (D) in the school auditorium. When she arrived at the auditorium she found that defendant was accompanied by another juvenile, W.T.P. (P). As recited in the police report: "D and P began to hassle her with their hands; touching her body and making remarks such as "Come on—let's do it." She told them she was not interested in having sex. They heard teachers talking and decided to go to an area in the rear of the theater-auditorium stage area. Arriving in that area D and P continued to make remarks that they desired to have sexual intercourse with her. She continued to tell them she did not desire to have sex with them. D dropped his school book, removed her jacket and took her purse and placed same on the floor. P acted as the look-out from a nearby location and out of sight of D and the victim. * * * [There followed a description of the sexual assaults committed by both youths.] * * * She stated she continued to resist the advances of D and P. She stated she screamed after the above described sexual acts were completed and they all left the area unnoticed by any teachers or other students."

In adopting *N.J.S.A.* 2A:4A–26 the Legislature clearly showed an intention to deal forcefully with juveniles who commit serious offenses. For certain enumerated serious offenses such as homicide, armed robbery, kidnapping, and rape, waiver is mandated unless the juvenile can meet the burden of showing the probability of rehabilitation substantially outweighs the reasons for waiver. Compare the prior law, *N.J.S.A.* 2A:4–48, wherein the burden was on the State to prove a lack of such probability. However this get-tough determination was accompanied by an option for rehabilitation under the aegis of the Family Part in those cases where it is clear that the rehabilitation is likely to be successful and the need for waiver is not compelling. While "the reasons for waiver" are not spelled out in the statute, we have no doubt the Legislature had in mind the seriousness of the nature and circumstances of the charge or of the prior record of the juvenile. *See N.J.S.A.* 2A:4A–26a(3), first paragraph.

It is important to note, however, that the nature and circumstances of the charge refers to the manner in which the offense was carried out, not its inherent seriousness. Thus the commission of a rape—in itself serious, indeed heinous—does not bar juvenile treatment. It only shifts the burden as to the probability of rehabilitation and the relationship of that probability to the public's interest in waiver. In this balancing, it is appropriate to consider the offense in the context of the legislative guidelines supplied for sentencing—whether it was committed in an especially heinous, cruel or depraved manner and whether grave or serious harm was inflicted on the victim beyond that implicit in the offense itself, including any particular vulnerability of the victim. *See N.J.S.A.* 2C:44–1a(1) and (2).

With this background, we can now return to the case of R.G.D. R.G.D. presented the testimony of Dr. Edward Tobe, a highly qualified board certified psychiatrist, experienced in the evaluation and treatment of adjudicated delinquents. His testi-

mony was compelling and his conclusion that R.G.D. could in all probability be rehabilitated before becoming 19 unequivocal. No evidence was offered by the State in rebuttal. The trial judge accepted Dr. Tobe's expertise in psychiatry but found he "has had no experience in dealing with children who have been committed to Correctional Institutions in the State of New Jersey and had no knowledge whatever of any specific rehabilitative program available to juveniles through the New Jersey Court System" and rejected his conclusion "because of his unfamiliarity with the New Jersey Corrections Systems and Programs through the Family Court, as well as his inexperience with children who had been committed to New Jersey Youth Correctional Facilities."

The finding that Dr. Tobe had no New Jersey experience is fully supported by the record. Although a New Jersey resident, the doctor practices in Pennsylvania. His experience involved individuals committed in that State. We consider that fact entirely irrelevant. We are aware of no evidence or theory which would distinguish between the rehabilitativeness or treatment of Pennsylvania delinquents as opposed to our domestic variety (assuming the offender is a New Jersey resident and not, as is often the case, an out-of-state commuter). Nor are we persuaded that the doctor's knowledge of our specific rehabilitative programs is an appropriate consideration in evaluating his opinion. Such information was presented to the court in the form of testimony from a probation officer and, in any event, is expected to be known and understood by the trial judge by virtue of his Family Part responsibilities.

Ordinarily, matters of weight and credibility are in the exclusive domain of the fact-finder and inappropriate for our review. The trial judge was free to accept that part of Dr. Tobe's opinion as appeared sound, reject all of it or adopt all of it. But when the trial judge gives his rationale for rejecting the expert's testimony and we find the reasoning to be improper or

inappropriate, we must reject the fact-finder's conclusion. Here the conclusion that the opinion was unpersuasive because Dr. Tobe had no experience with children who had been committed to our facilities was a *non sequitur.* His conclusion that it was unpersuasive because of Dr. Tobe's unfamiliarity with our correctional system was based on the formless sand of irrelevancy.

From a careful consideration of the record, we are persuaded that R.G.D. convincingly established the probability of his rehabilitation by the clear and positive testimony of Dr. Tobe, unrebutted by the State.

We recognize that the trial judge found that the alleged rape "was committed in a particularly heinous manner." Were this so, waiver would be mandated because the rehabilitative element could not substantially outweigh the reasons for waiver. However, from the same careful consideration of the record, we are satisfied that this finding is not supported by the record. The offense, rape, is inherently heinous and vicious. But this alone does not compel waiver. The legislature has decreed that a juvenile charged with such an offense should not be waived if he can show the probability of rehabilitation substantially outweighs the reason for waiver. Therefore we do not look at the gravity of the offense, but whether, apart from its intrinsically heinous and cruel character, the rape was committed in a particularly heinous, cruel or depraved manner. *Cf. State v. Martelli,* 201 *N.J.Super.* 378, 385–386 (App.Div.1985). The evidence is that it was not. Not only did A voluntarily go to the auditorium pursuant to a prior agreement with R.G.D. but, once there and after sexual advances had been made, she not only remained but moved twice to get away from others who came into the auditorium. This is not to say that A consented to the rape or that the offense was not heinous—we do no more than find that the evidence does not support a conclusion that it was committed in a particularly heinous, cruel or depraved

manner or a finding that defendant's conduct added an element of cruelty beyond that found in the crime of rape itself.

In its brief the State contends that waiver is required for the protection of the public. We agree such a factor, if it exists, would be an appropriate consideration. Here, however, the record does not demonstrate that R.G.D. would be a continuing threat. Dr. Tobe's opinion is to the contrary and R.G.D.'s present status wherein the court has permitted him to live at home and attend school, where he is apparently doing well, bears mute testimony that he is not a threat.

## W.T.P.

W.T.P. contends that the probability of his rehabilitation makes waiver unjustified. He offered no expert proofs to support his conclusion. He claims to have been unable to do so because his parents could not afford the expense and his request for a court appointed expert was denied.

We disapprove of the denial. The court has a *parens patrie* obligation to insure the infant's interests are fully protected. Any question of the parents' ability to pay is subservient to due process. Payment can be dealt with at a later time. *See R.* 5:3–3, and *cf. R.* 5:3–4(a).

His case must be remanded for further proceedings consistent with our opinion as to R.G.D., with the assistance of an expert.

The orders transferring the matters to the Law Division are reversed and the matters remanded to the Family Part. On remand an order shall be entered denying transfer of R.G.D. and the matter of W.T.P. shall be further considered in a manner consistent with this opinion.