618 A.2d 384

STATE OF NEW JERSEY v. MONIQUE MCCOY,
MELODY D. GRANT, XAVIER S. BROWN.

Superior Court of New Jersey
Law Division (Criminal)
Middlesex County

October 5, 1992.

*Mark Cassidy*, Assistant Prosecutor for the State.

*Allan Marain*, Assistant Deputy Public Defender, for defendant Monique McCoy.

*Ingrid Yurchenco*, Assistant Deputy Public Defender, for defendant Xavier S. Brown.

BERMAN, J.S.C.

Hypothesize the following: three individuals (Alpha, Bravo, and Charlie)[1] are arrested and charged with possession of a controlled dangerous substance seized from an automobile in

---

[1] Fictitious names for the hypothetical, simply adopted from the military phonetic alphabet.

which all three were riding. Bravo, in the absence of her attorney, gives a statement to Alpha's attorney, exculpating Alpha, but implicating herself.

Alpha's attorney, in an attempt to secure a favorable plea bargain for her, provides the statement to the County Prosecutor who now seeks to use it against Bravo. The issue, of some novelty, is as follows: may the State utilize the statement of a defendant taken in violation of the Rules of Professional Conduct? [2] The rules that this issue implicates are as follows:

MODEL CODE OF PROFESSIONAL RESPONSIBILITY DR–7–104(A)(1)
MODEL RULES OF PROFESSIONAL CONDUCT Rule 4.2
COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL.

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

MODEL CODE OF PROFESSIONAL RESPONSIBILITY DR–7–104(A)(2)
MODEL RULES OF PROFESSIONAL CONDUCT Rule 4.3
DEALING WITH UNREPRESENTED PERSON.

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyers' role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

Defendant Monique McCoy ("Bravo" hereinabove) argues that the statement obtained by co-defendant's counsel is violative of either *R.P.C.* 4.2 or *R.P.C.* 4.3 and therefore should be suppressed. Assuming arguendo that defense counsel for Melody Grant ("Alpha" hereinabove) did violate a disciplinary rule, defendant's motion to suppress the statement must nonetheless be denied.

When evidence is obtained in violation of the Rules of Professional Conduct, the decisional law that is of guidance in this and other jurisdictions dictates in favor of admission. *State v. CIBA–GEIGY Corp.*, 247 *N.J.Super.* 314, 589 *A.*2d 180

---

[2] This court is not ruling that Alpha's attorney breached the Rules of Professional Conduct, but assuming it for the purposes of this opinion.

(App.Div.1991); *State v. Riley,* 216 *N.J.Super.* 383, 523 *A.*2d 1089 (App.Div.1987); *State v. Porter,* 210 *N.J.Super.* 383, 510 *A.*2d 49 (App.Div.1986); *State v. Darby,* 211 *N.J.Super.* 367, 511 *A.*2d 1222 (App.Div.1986); *Barbetta v. Sciaraffa,* 135 *N.J.Super.* 488, 343 *A.*2d 770 (App.Div.1975); *Suarez v. State,* 481 *So.*2d 1201 (Fla.1985).

In *Barbetta v. Sciaraffa, supra,* 135 *N.J.Super.* at 495, 343 *A.*2d 770 the eminently respected Judge Kolovsky went so far as to view an attorney's failure to testify, even though subjecting him to disciplinary proceedings, as reversible error.

In *State v. Riley, supra,* 216 *N.J.Super.* at 390, 523 *A.*2d 1089, one of the more recent cases dealing with exclusion based on ethical violations, the court noted,

> In general, if a lawyer violates the rules he may subject himself to disciplinary proceedings but we know of no *per se* bar to the admissibility of information he has learned based upon the ethical violation. No case that we have found either in New Jersey or elsewhere has enunciated such a general rule. On the contrary, it has been held that evidence obtained in violation of applicable disciplinary rules is indeed admissible.

*Riley* dealt with *R.* 1:16–1 and the defendant's attorney contact with a juror regarding his personal bias, after entry of a guilty verdict. The statement was held admissible at hearing on Riley's petition for post conviction relief.

Looking beyond New Jersey's borders, in *Suarez v. State, supra,* 481 *So.*2d at 1206, the Florida Supreme Court concluded that, "violation of the disciplinary rule alone does not require suppression of statements resulting from such violation". They concurred with the Michigan Supreme Court in their determination as to whether a voluntary and knowing statement must be suppressed solely because of a disciplinary rule violation. Citing to *People v. Green,* 405 *Mich.* 273, 274 *N.W.*2d 448 (1979), defendant asserted his rights had been violated and unless his statement was suppressed, no effective remedy would redress this wrong. The Court in *Suarez* relying on *Green* opined,

> "This argument rests upon a basic misconception of the Code of Professional Responsibility. The provisions of the code are not constitutional or statutory

rights guaranteed to individual persons. They are instead self-imposed internal regulations prescribing the standards of conduct for members of the bar. Although it is true that the principal purpose of many provisions is the protection of the public, the remedy for a violation has traditionally been internal bar disciplinary action against the offending attorney. The sanctions available are by no means trivial. The attorney faces permanent disbarment.... The admissibility of evidence in a court of law, on the other hand, is normally determined by reference to relevant constitutional and statutory provisions, applicable court rules and pertinent common-law doctrines. Codes of professional conduct play no part in such decisions." *Suarez, supra,* 481 *So.*2d at 1206.

The *Suarez* Court characterized the suppression remedy as "overkill" and concluded a more appropriate remedy would be Bar disciplinary action. In *Suarez,* the court states,

[D]isciplinary action directed against the offending attorney would be a more effective deterrent than the indirect sanction of the exclusionary rule. *Id.* at 1207.

ABSENT STATE ACTION, CONSTITUTIONAL GROUNDS ARE NOT INVOKED AND EXCLUSIONARY RULE TO SUPPRESS STATEMENT WOULD NOT APPLY.

"The Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities." *Rendell–Baker v. Kohn,* 457 *U.S.* 830, 837, 102 *S.Ct.* 2764, 2769, 73 *L.Ed.*2d 418 (1982).

Private persons are provided far more leeway in their attempts to procure evidence. What may be admissible by a private party would be excluded under the Due Process Clause if state action was involved.

The outer boundaries of private action are addressed by Connecticut Supreme Court Justice Hull:

The most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause.

[*State v. Holliman,* 214 *Conn.* 38, 570 *A.*2d 680 (1990) citing to *Colorado v. Connelly,* 479 *U.S.* 157, 166, 107 *S.Ct.* 515, 521–22, 93 *L.Ed.*2d 473 (1986)]

Judge Dreier in *State v. Porter, supra,* 210 *N.J.Super.* at 394, 510 *A.*2d 49 points out:

[V]iolation of the Rules of Professional Conduct do not necessarily constitute a basis for asserting State action sufficient to justify a claim of deprivation of a

constitutional right. The exclusionary rule is intended to vindicate a constitutional right. If the confession otherwise meets constitutional muster, an ethical violation alone does not rise to a deprivation of a constitutional right.

Defendant concedes that she is not suggesting that any rights of which she was deprived were constitutional in nature. (Db9). Accordingly, since the exclusionary rule remedies constitutional violations, those violations premised on Professional Conduct Rules do not qualify for exclusion.

Additionally, in *State v. Darby, supra,* 211 *N.J.Super.* 367, 511 *A.*2d 1222, the court found that violation of an ethical rule by a prosecutor when gathering evidence does not necessarily violate defendant's Sixth Amendment rights, so that the evidence obtained is not inadmissible. Judge Greenberg[3] further concludes: "We do not see why ethical rules must be incorporated into the Sixth Amendment. Further, we point out that evidence given in violation of applicable disciplinary rules may be admissible." *Id.* at 376, 511 *A.*2d 1222.

A state actor may violate ethical rules and constitutional rights are not affected, thereby barring exclusion. Clearly then, when a private actor in gathering evidence obtains a statement in violation of an ethical rule, that statement will be allowed in. Accordingly, co-defendant's counsel, as private actor, received the statement during his investigation and the statement will be allowed.

Lastly, defendant proposes suppression of the statement as the only available remedy when the Rules of Professional Conduct are violated.[4] Parallels are drawn by the defendant between Fourth Amendment violations resulting in exclusion of

---

[3] Judge *Morton* Greenberg, now sitting on the 3d Circuit Court of Appeals—not his brother Judge *Manuel* Greenberg.

[4] In theorizing about a civil remedy, the defendant, with reflective insight, observes in her brief: "This is hardly the type of case where negligence lawyers are waiting in line to take on contingency." Perhaps so; but this logic does not follow the law.

illegally obtained evidence and ethical violations with a proposed remedy of exclusion.

The deterrence rationale prompting exclusion under Fourth Amendment violations cannot be substituted for violations of ethical codes.

As Florida Justice Ehrich observed, deterrence of ethical violations may be effected through Bar discipline:

> In the absence of constitutional grounds for suppression, the only possible basis for suppression would be to discourage violation of DR 7–104(A)(1). Suppression of the statements would therefore be in the same posture as exclusion of evidence under the exclusionary rule. The exclusionary rule exists 'to deter—to compel respect for the constitutional guarantee [against illegal search and seizure] in the only effectively available way—by removing the incentive to disregard it.' *Elkins v. United States,* 364 *U.S.* 206, 217, 80 *S.Ct.* 1437, 1444, 4 *L.Ed.*2d 1669 (1960). The exclusionary rule thus exists because it is the only effective way to deter violations of a constitutional right. However, we have another effective way to deter violations of an ethical rule. Bar discipline can be initiated by The Florida Bar, and also may be initiated by a circuit court or a district court judge pursuant to Florida Bar Integration Rule, article XI, Rule 11.14. The goal of deterrence is therefore achieved without the 'overkill' of suppression and reversal.
>
> [*Suarez v. State, supra,* 481 *So.*2d at 1207.]

Similarly, lawyers admitted to practice in New Jersey may face sanctions under the administration of a disciplinary authority if their conduct violates ethical rules. See *R.P.C.* 8.3.

■ Therefore, the appropriate remedy is not suppression of the statement but review by a disciplinary board. As *Suarez* suggests, to exclude the evidence would amount to an "overkill" when an alternative remedy is available, notwithstanding that this remedy yields McCoy a pyrrhic triumph at best.

In light of the New Jersey decisional law cited hereinabove and the persuasive out-of-state authority, the court denies defendant's motion to suppress her statement.